STIELER v. PEARSON.

1. CHAMPERTY AND MAINTENANCE—PURCHASING NOTE WITH INTENT TO SUE—PRACTICING ATTORNEY—ABANDONMENT.
  In action on promissory note by attorney, evidence *held*, to show that he had not abandoned practice of law, rendering him amenable to statute prohibiting attorney from purchasing promissory note with intent of bringing suit thereon contrary to 3 Comp. Laws 1929, § 13593.

2. SAME—INTENT—STATUTES.
  Attorney's purchase of promissory note is unlawful only when done for purpose of bringing suit, thereby annoying and harassing debtor and making him costs.

On purchase of cause of action by attorney as champertous, see annotation in 4 A. L. R. 173.

3. SAME—VIOLATION OF STATUTE—INTENT.

> Where evidence shows that attorney's purchase of promissory note on which he brought suit was not for purpose of oppression or annoyance, but only to put himself in more strategic position in dealing with debtor, who refused to pay just obligations, there was no violation of statute, and plaintiff was entitled to judgment (3 Comp. Laws 1929, § 13593).

Appeal from Wayne; Moll (Lester S.), J. Submitted June 10, 1932. (Docket No. 79, Calendar No. 36,565.) Decided October 3, 1932.

Assumpsit by Ernest C. Stieler, assignee of Arthur F. De Yonker, trustee in bankruptcy of Detroit Soluble Oil Company, a corporation, against Alan H. Pearson on a promissory note. Judgment for defendant. Plaintiff appeals. Reversed, and remanded for entry of judgment for plaintiff.

*Harry M. Stone,* for plaintiff.

McDONALD, J. This action is on a promissory note given by the defendant to the Detroit Soluble Oil Company and purchased by the plaintiff from its trustee in bankruptcy.

In defense to the action it was urged that there could be no recovery because at the time he acquired the note the plaintiff was an attorney and purchased it with the intent and purpose of bringing suit thereon contrary to 3 Comp. Laws 1929, § 13593.

On the trial the court adopted the theory of the defense, and entered a judgment against the plaintiff.

As cause for appeal, the plaintiff insists that at the time he purchased the note he was not an attorney in the sense intended by the statute, and that he did not purchase it with the purpose of bringing suit thereon.

1. The plaintiff was admitted to the bar and began the practice of law in the city of Detroit in 1909. But he claims to have abandoned it in 1914, at which time he became connected in business with the Detroit Soluble Oil Company and other business concerns. He was engaged in these various enterprises when he bought the note in question. Though the major portion of his business was not of a legal character, it was shown in his own testimony that he acted as general legal counsel for the companies in which he was interested; that he used his letterheads on which he was designated an attorney in attempting to collect delinquent accounts; that he caused himself to be listed in the telephone books and city directories as "lawyer;" that he continued to transact legal business for clients up to the point of litigation and then turned them over to another lawyer of his own selection. In view of these facts, it cannot be said that he had abandoned the practice of law and was not amenable to the statute which prohibits an attorney purchasing a promissory note, etc., "with the intent and for the purpose of bringing any suit thereon."

2. The second element of the case involves the question of plaintiff's purpose in purchasing the note.

Of course it is perfectly legitimate for an attorney to buy a note or other claim of indebtedness against another. It is unlawful only when he does so for the purpose of bringing suit, thereby annoying and harassing the debtor and making him costs. The plaintiff was associated in business with the defendant. He was president of the Detroit Soluble Oil Company, and the plaintiff was its secretary. The defendant became indebted to the company by overdrawing his salary. The note in question represents

the amount of that overdraft. The defendant also became indebted to the plaintiff as a joint guarantor with him and their business associates on a $36,000 obligation to the American State Bank of Highland Park. He did not pay, and plaintiff was compelled to pay his share of the obligation. After these transactions the Detroit Soluble Oil Company went into bankruptcy. The note in suit was listed as an uncollectible asset and was offered to the highest bidder. The note was for the payment of $3,085.71. The plaintiff bought it for $15. He says he did not buy it for the purpose of bringing suit thereon, and the circumstances all tend to support his claim in that respect. He did not begin suit for nearly two years, and then only when action was about to be barred by the statute of limitations. He says he bought it for the purpose of placing himself in a more advantageous position in bringing about a settlement of defendant's other indebtedness to him.

"I wanted that note in my hands with the aim of coming to a compromise or settlement with Mr. Pearson upon these other amounts advanced by me, by my associates and myself, and to which he should have paid his share."

In purchasing the note in these circumstances, we do not think the plaintiff violated the spirit and object of the statute. The statute prohibiting the buying of claims by attorneys with the intention of bringing suit thereon has a useful and beneficial purpose, and should be rigidly adhered to when the purpose of the purchase is for speculation or profit and tends to annoy or harass the debtor and make him costs. From the facts attending the purchase of this note, we are satisfied that the plaintiff did not intend to use it as a means of oppression or

annoyance, but only to put himself in a more strategic position in dealing with a man who refused to pay his just obligations.

The judgment is reversed, and the case remanded in order that judgment may be entered for the plaintiff, with costs.

Clark, C. J., and Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.